IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: TWO GUNS CONSULTING | § | CASE NO. 20-20077 |
| & CONSTRUCTION, LLC, | § | |
| Debtor. | § | CHAPTER 11 |

### MOTION FOR ORDER AUTHORIZING DEBTOR'S PAYMENT OF PRE-PETITION CLAIMS FOR EMPLOYEES' WAGES, BENEFITS, REIMBURSEMENTS AND RELATED TAXES

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

Two Guns Consulting & Construction, LLC ("Debtor") files this motion seeking approval of the Debtor's payment of pre-petition claims for employee's wages, benefits, reimbursements, and related taxes pursant to §§ 105, 507(a)(4), 507(a)(5), and 507 (a)(8)(D) of Title 11 of the United States Code (the "Bankruptcy Code").

Facts Relevant To This Motion

1.  On February 11, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. No Trustee, examiner, or official committee of unsecured creditors has been appointed. The Debtor continues to operate its business pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.  As of the Petition date, the Debtor employed 4 persons who performed various services for the Debtor ("Employees"). Debtor's owner and manager receives a salary and the

other employees are paid hourly. The duties of all the Employees are directly related to and necessary for the ongoing operation of the Debtor's business.

3. The Debtor pays the Employees on Friday of each second week in arrears for services performed during the bi-weekly period ending on the Sunday three days earlier. Thus as of the Petition date of February 11, the Employees were owed for one full prepetition pay period. The Debtor's total payroll due on February 14, 2020, is $6,884.07 in wages, $502.20 in business mileage expense, $1,115.39 in withheld taxes, and $232.77 in withholdings for child support and garnishment, a total of $8,734.43. All of these amounts relate to the pre-petition period.

4. Attached hereto as **Exhibit 1** is a list of the Debtor's current employees and a detailed listing of their bi-weekly compensation.

5. In addition to the sources of pre-petition Compensation paid directly to Employees, the Debtor makes Deductions from Employees' paychecks in order to make payments on behalf of Employees for various expenses, including taxes and child support withholding, which the Debtor deducts from the Employees' paychecks and pay that amount to a third party (collectively, "Deductions"). All the Deductions have been collected and will be paid as required.

6. Further, in addition to pre-petition Compensation and Deductions, Debtor maintains various employment policies concerning compensation for sick time, for vacation pay, (collectively, "Employment Policies"). The Debtor desires to continue to honor its existing Employment Policies.

7. Finally, the Debtor uses the services of Unique Staff Leasing III Ltd. to calculate and process the Compensation and Deductions, and pays them a small fee for such services as part of each payroll run.

8. The Debtor's failure to pay the Employees for pre-petition services will result in severe disruptions to the operation of the Debtor's business, hardship to the Employees, and to the detriment of the creditors of the Debtor's estate.

9. The Debtor must be allowed to pay pre-petition Compensation and Deductions in the regular course of business. If there is any interruption in the Debtor's compensation of its Employees for work performed, the Employees may suffer extreme personal hardship and, in many cases, be unable to meet their living expenses. The inevitable consequence would be Employee defections, unmanageable turnover, resentment, loss of goodwill and disintegration of employee morale. These factors would most certainly have an adverse affect upon the Debtor's operational efficiency. For these reasons, it was essential that undue hardships that the Employees would have suffered as a consequence of the Debtor's chapter 11 filing be minimized.

10. The total dollar value of the payments is *de minimis* when compared to the size of the Debtor's estate and the importance of Employees' continued service. Moreover, all of the pre-petition Compensation and Deduction payments for which the Debtor seeks authority are entitled to priority in payment under §§ 507(a)(3), (4), & (8)(D) of the Bankruptcy Code.

11. The Debtor has available cash sufficient to pay the requested pre-petition Compensation and Deductions and all costs incident thereto, as such amounts became due in the regular course of the Debtor's business. Prior to paying the pre-petition Compensation and Deductions, the Debtor made a determination that such payments would not have an adverse impact on the Debtor's cash flow or otherwise have a detrimental affect on the Debtor's ongoing operations or ability to reorganize, but that in fact the payments were necessary to the Debtor's continued survival and of great benefit to the estate and to other creditors of the estate.

Relief Requested

12. Through this Motion, the Debtor seeks Court approval, in its discretion, of the Debtor's payment of the outstanding Pre-petition Compensation and Deductions, and honoring its Employment Policies, and paying reimbursements, all in the ordinary course of its business. None of the pre-petition Compensation due and owing by the Debtor to any particular Employee exceeded the sum allowable as a priority claim under § 507(a)(4) of the Bankruptcy Code. Additionally, the Debtor seeks approval of its honoring its existing employee Benefit Policies, including honoring pre-petition paid leave, holiday and sick leave policies in the ordinary course of business under § 507(a)(5). The Debtor also seeks approval of its paying all costs incident to pre-petition Compensation and Deductions, such as payroll-related taxes that are priority claims under § 507(a)(8)(D) of the Bankruptcy Code, and processing costs, if any. For the reasons set forth herein, the Debtor believes that the relief requested is necessary and appropriate under the circumstances.

This Court Has The Authority Pursuant To § 105(A)
Of The Bankruptcy Code To Grant The Relief Requested Herein

13. Pursuant to Bankruptcy Code § 105(a) ("§ 105"), "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The basic purpose of § 105(a) is "to enable the court to do whatever is necessary to aid in their jurisdiction, in anything arising in or relating to a bankruptcy case." 2 *Collier on Bankruptcy* ¶ 105.2 at 105-4 (15th ed. 1988). Essentially, § 105(a) codifies the bankruptcy court's inherent equitable powers. *See In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985).

14. Where business exigencies require, courts have exercised their equitable power under § 105(a) to authorize debtor to pay pre-petition claims of particular creditors. *In re*

*Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989).  Courts have labeled this power the "Necessity of Payment Doctrine".  The "Necessity of Payment Doctrine" empowers a court to authorize a debtor to pay pre-petition claims essential to continued operations.  *Id*. at 175-76, *citing Miltenberger v. Logansport, C. & S. W. R. Co.*, 106 U.S. 286 (1882):

> The "necessity of payment" doctrine permits immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid.

*Ionosphere Clubs*, 98 B.R. at 176, *quoting In re Leigh and New England Railway Company*, 657 F.2d 570, 581 93rd Cir. 1981); see also *In re Chateaugay Corp.*, 80 Bankr. 279 (S.D.N.Y. 1987); *In re Gulf Air, Inc.*, 113 Bankr. 152 (Bankr. W.D. La. 1989)  This doctrine applies in all chapter 11 cases because "the rationale for the necessity of payment rule, *i.e.*, facilitating the continued operation and rehabilitation of the debtor . . . is . . .  a paramount goal of chapter 11." *Ionosphere Clubs*, 98 B.R. at 176, citing *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), *cert. den'd*, 325 U.S. 873 (1945).  Therefore, where continued operation and rehabilitation of a debtor require payment of pre-petition wages, the court may authorize such payment under § 105(a) of the Bankruptcy Code.

15.     For example, in *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983), the district court recognized the "special status" of suppliers holding unstayed lien rights, and authorized the debtor to pay their claims in the ordinary course of their business activities.  *See*, *also*, *In re Dave Noake, Inc.*, 45 B.R. 555 (Bankr. D. Vt. 1984) (rejecting a challenge under § 549 to post petition payments made to creditor holding lien rights under local law).  Similarly, one former bankruptcy judge recognized that when "confronted with special circumstances . . . particularly in the early stages of the case, a court may preserve the potential for rehabilitation." Ordin, *Finality of Order of Bankruptcy Court*, 54 Am. Bankr. L.J. 173 (1980).

16. In addition, the bankruptcy court for the Southern District of Texas authorized Continental Airlines Corporation ("Continental"), a debtor in possession, to pay approximately $4 million in pre-petition obligations owned to Continental's foreign creditors. Continental urged that such action was necessary "to maintain a continued and uninterrupted flow of repair and maintenance services, supplies and necessaries in order to meet their current operating needs and thereby continue their foreign airline business operations." *In re Continental Airlines Corporation, et al.*, Order dated September 29, 1983, Chapter 11 Case No. 83-0419-H2-5 (Bankr. S.D. Tex.). Similarly, in *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989), the Court noted that cases decided both under the Bankruptcy Act and the Bankruptcy Code endorsed the Necessity of Payment Doctrine so long as, absent such payment, "there is a risk that the services of key employees will be lost to the debtor and without such employees, the ability of the debtor to reorganize will be impaired." *Id*.

17. For a number of reasons, the Bankruptcy Code affords special treatment to certain pre-petition claims of employees. Compared to a typical claim in bankruptcy, wages represent a large part of an employee's wealth. In addition, unlike an ordinary trade creditor, the typical employee does not have other sources of income and thus cannot diversify the risk of the employer's default. The Bankruptcy Court's use of its equitable powers "to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs, Inc.*, 98 Bankr. at 175 (cites omitted). Under the court's equity powers, several doctrines have been developed that authorize the post petition payment of the pre-petition obligations prior to the confirmation of a plan of reorganization and/or the granting of post-petition administrative priority to pre-petition obligations. These

doctrines include the "six-month rule"[1], the "direct benefit" rule[2], the "equitable benefits" doctrine[3], and the "necessity of payment" rule[4]. While several of these equitable doctrines have been limited by case law and subsequent legislative action to specific situations, the initial common thread was the. recognition by a bankruptcy court of the need to do "substantial justice" by utilizing their equity powers to authorize the post-petition payment of pre-petition debts and/or the granting of post-petition administrative priority to pre-petition obligations.[5]  Even a court taking a "strict" or "narrow" view of the use of the equity powers to authorize the payment of pre-petition debt has recognized that:

> [A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code.

---

[1] *In re Boston and Maine Corp.,* 634 F.2d 1359 (1st Cir. 1980) (discussing "six-month" rule).

[2] *In re Ulen & co.,* 130 F.2d 303 (2nd Cir. 1942); *In re Detroit International Bridge Co.,* 111 F.2d 335 (6th Cir. 1940); *Finn v. Childs Co.*, 181 F.2d 431 (2nd Cir. 1950); *In re Jensen-Farley Pictures, Inc.*, 47 Bankr. 557 (Bankr. D. Utah 1985) (discussing "direct benefits" rule).

[3] *Randolph v. Scuggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903); *In re Jensen-Farley Pictures, Inc.*, 47 Bankr. 557 (Bankr. D. Utah 1985) (discussing the "equitable benefits" doctrine).

[4] *In re Ionosphere Clubs, Inc.,* 98 Bankr. 174 (Bankr. S.D. N.Y. 1989) (citing to *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882) and *Dudley v. Mealey*, 147 F.2d 268 (2nd Cir. 1945), *cert. denied*, 325 U.S. 873 (1945)).

[5] There is a line of cases that takes the view that the use of the equity powers of the court to authorize the post-petition payment of pre-petition obligations absent a confirmed plan of reorganization is violative of the express provisions of the Bankruptcy Code. *See Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299 (4th Cir. 1987) cert. denied, 485 U.S. 963, 109 S.Ct. 1228 (1989); In re FCX, Inc. 60 Bankr. 405 (E.D.N.C. 1986). But see *In re Chateaugay Corp*., 80 Bankr. 279 (S.D.N.Y. 1987) where the Court addressed this concept in light of priorities under § 507 and classification of claims under § 1122:

> A rigid application of the priorities of § 1507 would be inconsistent with the fundamental purposes of reorganization and of the [Code's] grant of equity powers to the bankruptcy courts, which is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately .... [E]ven if § 1122 applied to preplan proceedings, "the fact that the bankruptcy courts are courts of equity ... allows exceptions to any strict rules of classifications of claims." *In re Chateaugay*, 80 Bankr. 279, 287-288 (S.D.N.Y. 1987) (cites omitted).

> The court can conceive of rare instances in which the payment of a pre-petition debt may be absolutely vital to the reorganization of a Chapter 11 debtor.

*In re Structurelite Plastics Corp.,* 86 Bankr. 922, 932 (Bankr. S.D. Ohio 1988). Clearly, the continuation of favorable employee relations is imperative in this reorganization process, and this Court is authorized to approve the Motion pursuant to its basic equity powers.

18.    Additionally, the payment of the Pre-petition Compensation and Benefits was justified because such wages and benefits are granted a priority payment right under the Bankruptcy Code.  Under Bankruptcy Code § 507(a)(4) ("§ 507"), each Employee will be granted a priority claim for:

> Third, allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--
>     (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>     (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the Debtor.

11 U.S.C. § 507(a)(4). Likewise, under § 507(a)(5), Employees may ultimately be granted a priority claim for:

> Fourth, allowed unsecured claims for contributions to an employee benefit plan --
>     (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>     (B)    for each such plan, to the extent of--
>         (i)    the number of employees covered by each such plan multiplied by $10,000; less
>         (ii)    the aggregate amount paid to such employees under paragraph (3) of this subsection [regarding certain wages, salaries or commissions], plus the aggregate amount paid by the estate on

>           behalf of such employees to any other employee
>           benefit plan.

11 U.S.C. § 507(a)(5).

19. Inasmuch as the Pre-petition Compensation for which the Debtor seeks approval of payment was earned within 180 days of the commencement of the Debtor's bankruptcy case, Employees' claims for payment of such compensation are entitled to priority pursuant to § 507(a)(4). Additionally, the Benefits are entitled to priority pursuant to § 507(a)(5) because they represent contributions to employee benefit plans arising from services rendered within 180 days of the Petition Date.

20. Finally, the Deductions and certain of the Benefits represent funds that the Debtor is not entitled to hold for any protracted period, since the Debtor effectively holds these amounts in trust and the Employees themselves hold a direct claim against such funds, and as such those amounts are also entitled to a priority under § 507(a)(8)(D). Because it is likely that, whatever the outcome of this chapter 11 case, the Debtor will ultimately be required to disgorge funds equivalent to the amount of the Trust Funds, there is ample justification for the payment of the Trust Funds to or on behalf of the Employees in the ordinary course of the Debtor's business.

Conclusion

21. To maintain the continuity and to preserve the morale of employees, to prevent serious personal hardship to a number of those employees, the Debtor was required to pay the pre-petition Compensation, Deductions, and honor its Employment Policies. Court approval of the payments will maintain the viability of the Debtor's business.

The Debtor respectfully requests that after hearing, the Court approve the Debtor's payment of pre-petition accrued employee wages ("Compensation"), Deductions payable to third parties, and honoring its Employment Policies, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Nathaniel Peter Holzer*
Nathaniel Peter Holzer
Texas Bar No. 00793971
***Jordan, Holzer & Ortiz, P.C.***
500 North Shoreline Boulevard, Suite 900
Corpus Christi, TX 78401-0341
Telephone:  361.884.5678
Facsimile:   361.888.5555
Email: pholzer@jhwclaw.com
**PROPOSED ATTORNEYS FOR DEBTOR TWO GUNS CONSULTING & CONSTRUCTION, LLC**

## CERTIFICATE OF SERVICE

I certify that on February 24, 2020, a true and correct copy of the foregoing was served electronically to all parties registered with the Court's electronic noticing system and to all creditors shown on the attached list via U.S. First class mail. The service lists are not included in the mailout but may be obtained by contacting Debtor's counsel.

*/s/  Nathaniel Peter Holzer*
Nathaniel Peter Holzer

**ECF Service List**

| United States Trustee<br>606 N. Carancahua, Ste. 1107<br>Corpus Christi, TX  78401<br>USTPRegion07.CC.ECF@USDOJ.GOV | Counsel for San Patricio County<br>Diane Sanders<br>Linebarger, Goggan, Blair & Sampson<br>P.O. Box 17428<br>Austin, TX  78760<br>austin.bankruptcy@publicans.com | Counsel for Ligonier Construction Company, Inc.<br>Patrick H. Autry<br>Branscomb PC<br>8023 Vantage Drive, Suite 560<br>San Antonio, TX 78230<br>pautry@branscomblaw.com<br>bsmith@branscomblaw.com |
|---|---|---|
|  |  |  |

Internal Revenue Service
Centralized Insolvency Solutions
P.O. Box 7346
Philadelphia, PA. 19101-7346

Texas Workforce Commission
Bankruptcy Unit, Room 556
101 E. 15th Street
Austin, TX. 78778-0001

Alex E. Paris Equip & Sales Co.
1595 Smith Township State Rd.
Atlasburg, PA 15004

Atlas Trenchless, LLC
1351 Broadway Street West
Rockville, MN 56369

Badger Daylight Corp.
75 Remittance Dr., Suite 3185
Chicago, IL 60675-3185

Belmont Aggregates, Inc.
PO Box 349
Bridgeport, CT 43912

Chase Card Services
PO Box 94014
Palatine, IL 60094-4014

Darby Equipment Company
2940 N. Toledo Avenue
Tulsa, OK 74115

DBI, Inc.
15440 W. 109th St.
Lenexa, KS 66219

Horizon Supply Company
311 White Street
New Castle, PA 16101

Leslie Equipment Company
Attn: Tammy
105 Tennis Center Drive
Marietta, GA 45750

Ligonier Construction Co.
PO Box 277
Laughlintown, PA 15655

Longhorn Mulching Co.
7003 E. State Highway 103
Lufkin, TX 75901

Luby Equipment
2300 Cassens Drive
Fenton, MO 63026

Magnum Machine Works, LLC
7480 NW Caldwell Road
Kidder, MO 64649

McKinney Drilling Company
2434 Etring Avenue
Corpus Christi, TX 78415

Miley Fencing
54500 Sarahsville Road
Senecaville, OH 43780

Moorhead Brothers, Inc.
PO Box 124
Blacksburg, SC 29702

Ohio CAT
Box 774439
4439 Solutions Center
Chicago, IL 60677-4004

Southeastern Equipment Co., Inc.
PO Box 536
Cambridge, OH 43725

United Rentals (North America), Inc.
PO Box 840514
Dallas, TX 75284-0514

YAK MAT, LLC
2438 Hwy 98 E
Columbia, MS 39429

Jim Clancy
JD Egbert
Branscomb Law
802 N. Carancahua, Ste. 1900
Corpus Christi, TX 78401

Prosperity Bank
Attn: Bill Hailey
14201 Northwest Blvd.
Corpus Christi, TX 78410

Komatsu Financial
PO Box 99303
Chicago, IL 94583